The STATE of Utah, Plaintiff and Respondent,

v.

Erick L. WILLIAMS, Defendant and Appellant.

No. 20325.

Supreme Court of Utah.

Dec. 9, 1985.

David L. Wilkinson, Atty. Gen., Dave B. Thompson, Asst. Atty. Gen., for Salt Lake City, for plaintiff and respondent.

HOWE, Justice:

Defendant, Erick Luttral Williams, appeals from a conviction of forgery in violation of U.C.A., 1953, § 76–6–501.

On Friday, January 27, 1984, Williams accompanied a friend to a Midas Muffler Shop located in Salt Lake City to pick up his friend's car. When his friend was unable to pay for the repairs, defendant presented a check to the attendant in the shop. The check was payable to defendant in the amount of $217.37 and was drawn on the business account of the William Angell Construction Company. The attendant told him that she was not allowed to accept two-party or company checks. He assured her the check was good and convinced the assistant manager to accept it. The attendant recorded on the check defendant's social security number and other information from his Utah identification card. She phoned the bank and was told the check would clear. She also tried to contact Mr. Angell but was unable to reach him. She cashed the check and gave defendant money in change. The check was dishonored by the bank and defendant was charged with uttering a forged check.

At the trial, William Angell testified that three sequential numbered blank checks had been taken from his business, one of which was the check defendant presented to Midas. He further testified that Jean Marie Jackman, a secretary who had worked for him for two days in January, had called him in April and told him that she had taken the three blank checks. He also testified that he did not know defendant, had never employed him, had not owed him any money, and had not written the check nor given anyone permission to do so.

The jury found defendant guilty, and he was sentenced to serve one to fifteen years in the Utah State Prison.

Khristi Harrold, Salt Lake City, for defendant and appellant.

## I

Defendant contends that the trial court abused its discretion by failing to grant his motion for a continuance of the trial. It is well-established that the granting of a continuance is discretionary with the trial judge. Absent a clear abuse of that discretion, the decision will not be reversed by this Court. *State v. Creviston,* Utah, 646 P.2d 750 (1982); *State v. Moosman,* Utah, 542 P.2d 1093 (1975). It is also well-settled that when a defendant moves for a continuance in order to procure the testimony of an absent witness, as is the case here, he must show that the testimony is material and admissible, that the witness could actually be procured within a reasonable time, and that due diligence had been exercised before making the request. *State v. Creviston, supra. See, e.g., State v. Hartman,* 101 Utah 298, 119 P.2d 112 (1941); *Salazar v. State,* Alaska, 559 P.2d 66 (1976).

We find no abuse of discretion in the instant case. At the beginning of the trial, defense counsel told the judge that she had met with the prosecutor late in the afternoon of the previous day and that he told her that Jean Marie Jackman had called Mr. Angell and confessed to having taken the checks and forged them. Counsel asserted that if Jackman forged the checks and gave one of them to defendant, it might affect defendant's defense, depending on what representation Jackman would claim she made to defendant about the check. "It would go directly to his knowledge of whether or not it was forged," she charged. She requested a continuance of the trial because this information was revealed to her at such a late time.

Defendant was then burdened to show that Jackman's testimony would be material. She was only able to offer that she "[had] no idea" what her testimony would be or whether Jackman should have been subpoenaed for the trial. The trial court denied the continuance because the proposed testimony was speculative and unlikely to be material.

We find no error. If Jackman was not the person who gave the check to defendant, her testimony obviously would be immaterial. If, however, she did in fact give the check to defendant, her testimony as to what she told him about the check would be material to his knowledge when he later uttered the check to Midas. But under this theory, defendant knew about Jackman from the moment he took the check from her. Nothing in the record explains why he failed to earlier disclose Jackman's existence to his counsel. An accused must timely inform his attorney about matters pertinent to his own defense. If, in fact, he believed that the check was good, he should have disclosed to his attorney the circumstances under which he received it. Such a disclosure would obviously aid in his defense. The record contains no explanation, satisfactory or otherwise, for his failure to inform his attorney about Jackman. Neither was there a showing made that his counsel had inquired of him where he had obtained the check.

## II

Defendant next contends that the trial court erred in denying his motion for a new trial filed pursuant to Rule 24(a) of the Utah Rules of Criminal Procedure. As we have stated on many occasions, the decision to grant or deny a new trial is a matter of discretion with the trial court and will not be reversed absent a clear abuse of that discretion. *State v. Lesley,* Utah, 672 P.2d 79 (1983). Defendant based his motion for a new trial on newly discovered evidence under section 77–35–24. "New evidence" is not evidence which was available to defendant but not obtained by him prior to the time of trial. *State v. Harris,* 30 Utah 2d 77, 513 P.2d 438 (1973). Nor is it evidence that he knew about or could have discovered prior to trial. In an affidavit supporting the motion for a new trial, defense counsel stated "[she] believe[d] Ms. Jackman will testify that she hired the defendant Erick L. Williams to do odd jobs for her." She also stated that Ms. Jack-

man represented that she had been working for [William] Angell and that she had asked him to pay defendant on the debt instead of paying her wages directly to her." This information was not "newly discovered" as defined above nor has counsel proved that she exercised due diligence to obtain this information prior to trial. A new trial was no more justified than the request for a continuance of the trial.

### III

Finally, defendant assails his conviction on the ground that the evidence was insufficient to support the verdict. We reverse a jury conviction for insufficient evidence only when the evidence is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that defendant committed the crime of which he was convicted. *State v. Petree*, Utah, 659 P.2d 443 (1983); *State v. Kerekes*, Utah, 622 P.2d 1161 (1980); *State v. Lamm*, Utah, 606 P.2d 229 (1980).

■ Examining the evidence in support of this verdict, Mr. Angell testified that the check, along with two other checks, had been taken from the office located in his home. He further testified that he did not know defendant, had never employed him, did not owe him money, and that he had not written the check nor authorized anyone to do so. Defendant presented no evidence to controvert the logical inferences which could be drawn by the jury, i.e., that without any explanation as to where he got the check or from whom, the defendant knew the check was forged. The evidence against defendant was not so inherently improbable that it would necessitate a reasonable doubt in the minds of reasonable persons as to his guilt. *State v. Sparks*, Utah, 672 P.2d 92 (1983).

The conviction is affirmed.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.