STATE of Utah, Plaintiff and Respondent,

v.

Paul Brian TUCKER, Defendant and Appellant.

No. 19281.

Supreme Court of Utah.

Oct. 11, 1985.

James C. Bradshaw, Frances Palacios, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Dave B. Thompson, Asst. Atty. Gen., Robert L. Stott, Co. Atty., Salt Lake City, for plaintiff and respondent.

ZIMMERMAN, Justice:

This is an appeal from a conviction of aggravated robbery under U.C.A., 1953, § 76-6-302 (1978 ed.). Defendant challenges his conviction on grounds that he was identified by the victim as a result of an improperly suggestive showup and lineup, that the prosecutor's closing argument constituted impermissible comment on his failure to take the stand, and that the trial court erred in refusing to give a cautionary *Telfaire*-type instruction regarding the eyewitness identification of defendant. We reject these claims and affirm.

Early in the morning of February 18, 1983, two men were returning to their rooms at the Little America Motel at 5th South and Main Street in Salt Lake City, when one of them heard a noise behind them. While his companion continued walking down the street, he turned around and was confronted by a man pointing a small handgun and wearing a bandana that covered the lower part of his face. The man demanded all of the victim's money. He complied, handing over about $21, and then watched as the robber quickly ran down 5th South, where the victim glimpsed a police car. The car, occupied by two Salt Lake County sheriff's deputies, swerved to avoid hitting the fleeing robber. Although neither deputy had seen the robbery, they both thought the man's conduct was suspicious. While one officer parked the car, the other pursued the man on foot, losing sight of him when he ran down a nearby alley. At about the same time, a Salt Lake City police department vice squad officer happened by and joined in the pursuit. The vice officer chased the man down the alley and briefly lost sight of him, but continued on in the same direction until he reached a vacant lot. He scanned the lot with his

flashlight and discovered defendant, who ducked when the light struck him. The vice officer drew his revolver, announced that he was a police officer, and then detained defendant, who was dressed very much like the man the officer had been chasing. According to the vice officer, at the time of apprehension defendant was sweating profusely and had a rapid pulse. The vice officer turned defendant over to the Salt Lake County police officers. A search of defendant produced a bandana with a knot in it and about $21, while a search of the area through which the chase had taken place turned up a small handgun matching the description given by the victim. The victim and his companion, who had gone back to the motel after the robbery and summoned the police, were brought to the area by the police. Both men immediately identified defendant as the man who had committed the robbery. Approximately three weeks later, the victim again identified defendant as the robber by picking him from an eight-man lineup.

Defendant's first contention is that the initial showup in the vacant lot where he was apprehended was conducted under circumstances so fraught with potential for misidentification as to make the resulting identification unreliable and its admission violative of due process. *See Neil v. Biggers*, 409 U.S. 188, 198-200, 93 S.Ct. 375, 381-83, 34 L.Ed.2d 401 (1972); *State v. McCumber*, Utah, 622 P.2d 353, 357 (1980). We do not reach this issue because there is no indication in the record that defense counsel ever raised it below. Under such circumstances, we will not consider an objection raised for the first time on appeal. *See* Rule 4, Utah R.Evid.; *State v. McCardell*, Utah, 652 P.2d 942, 945-47 (1982).[1]

Defendant next argues that evidence of his identification by the victim at the lineup held one month after the rob-

---

1. The instant case was tried before September 1, 1983, the effective date of the amended rules of evidence. We therefore need not consider the impact of the plain error exception in new Rule

103(a) on the contemporaneous objection rule incorporated in Rule 4 or on the reasoning of *McCardell.*

bery should have been excluded. Relying on *Neil v. Biggers,* defendant contends that the lineup was tainted by the earlier suggestive showup. Again, we must reject defendant's claim because it was not raised at trial.

■ During the trial, defendant's counsel objected to the victim's testimony about the lineup "for foundation" and requested an off-the-record conference at the bench. Because the request was granted, no record exists as to the content of that objection. All the record reveals is that the court subsequently overruled it. After the jury was dismissed, defendant's counsel reiterated her objection on the record, stating that "there was no foundation laid as to the fairness and impartiality of that lineup in terms of the people who were in the lineup along with the defendant." On appeal, defendant's counsel does not contend that there were any foundational problems with the lineup. Instead, she alleges that the *Neil v. Biggers* due process argument applies—that because of the defective showup, the lineup was fraught with potential for misidentification. We have no record, however, of this objection being made below and must conclude, therefore, that the trial court's attention was never called to it. Under the contemporaneous objection rule, if the trial court objection does not "direct the court's attention" to the legal point being raised on appeal, we cannot consider it for the first time on appeal. 652 P.2d at 947.

■ The third claim is that the prosecutor's closing argument constituted impermissible comment on defendant's exercise of his fifth amendment right not to take the stand. For a statement by a prosecutor to be constitutional error his remark must be " 'manifestly intended or ... of such character that a jury would naturally and necessarily construe it to amount to a comment on the failure of the accused to testify.' " *State v. Nomeland,* Utah, 581 P.2d 1010, 1011 (1978), *quoting State v. Jefferson,* 116 R.I. 124, 137, 353 A.2d 190, 198 (1976); *accord, State v. Hales,* Utah, 652 P.2d 1290, 1291–92 (1982). . In the

present case, we do not find that constitutional error of reversible dimension occurred. During closing argument, the following colloquy took place:

> Mr. Stott (prosecutor): She tells you that the reason the defendant was sweating, [sic] because a gun was pointed at him. She doesn't tell us why he was in the field hiding, does she?
>
> Ms. Carter (defender): Your Honor, I am going to object to that.
>
> Mr. Stott: Also—
>
> Ms. Carter: The defense has no burden to put on any evidence of anything.
>
> Mr. Stott: I didn't say what the defense was. I said she didn't say—
>
> The Court: Counsel, let's complete this case. Let me make the statement, of course, that the burden is on the State to prove the case. The defendant does not have a burden of proving his innocence.
>
> Mr. Stott: Thank you. She didn't tell you, did she, why he was on that—
>
> Ms. Carter: Your Honor, I am going to object.
>
> The Court: Counsel, I would again admonish the jury and admonish you also that the State, the defendant does not have the responsibility of proving his innocence. The burden is on the State to prove the guilt.

At this point, the prosecutor continued with his summation, but made no further reference to the failure of defense counsel to explain defendant's actions.

This exchange does not appear to display an intention by the prosecutor to comment on the failure of defendant to take the stand. Rather, we think that the prosecutor simply was careless in choosing his words. He appears not to have even realized that his remarks could be construed as a comment on defendant's failure to testify, since he persisted without apparent guile after the judge first admonished the jury that defendant had no burden to carry. But even assuming that the remarks did, in fact, constitute impermissible comment and that the jury so understood them, we do not find that the error requires reversal.

Rule 30 of the Utah Rules of Criminal Procedure provides that "[a]ny error, defect, irregularity or variance which does not affect the substantial rights of a party shall be disregarded." U.C.A., 1953, § 77-35-30 (1982 ed.). We will not reverse a conviction unless the error "'is something substantial and prejudicial in the sense that there is a reasonable likelihood that in its absence there would have been a different result.'" *State v. Hutchinson*, Utah, 655 P.2d 635, 636 (1982), *quoting State v. Urias*, Utah, 609 P.2d 1326, 1329 (1980); *accord State v. Fontana*, Utah, 680 P.2d 1042, 1048 (1984). Considering all of the circumstances, there was no reasonable likelihood that the result would have been different had the prosecutor not made the improper comments. This is not a case where the prosecutorial misconduct was repetitive or intentional, as in *State v. Wiswell*, Utah, 639 P.2d 146 (1981). Nor is it one where the evidence of guilt was marginal. All the eyewitness identifications were certain and unwaivering, and the circumstantial evidence was convincing. Finally, defense counsel's prompt objections prevented the prosecutor from making any real point of the failure to testify, and the trial judge's quick and decisive admonition to the jury and prosecutor further obviated any harm that might have resulted from the comments. *See State v. Kazda*, Utah, 540 P.2d 949, 952-53 (1975) (Maughan, J., concurring).

The final claim is that the trial court erred in refusing to give a cautionary jury instruction concerning the reliability of the eyewitness testimony. The proposed instruction closely followed that recommended in *United States v. Telfaire*, 469 F.2d 552 (D.C.Cir.1972). We have recognized that under suitable circumstances a cautionary instruction of the type requested would be required. However, the question of whether such an instruction is required in a particular case has been left to the discretion of the trial courts. *State v. Reedy*, Utah, 681 P.2d 1251, 1252 (1984); *State v. Newton*, Utah, 681 P.2d 833, 834 (1984); *State v. Malmrose*, Utah, 649 P.2d 56, 61-62 (1982); *State v. Schaffer*, Utah,

638 P.2d 1185, 1187 (1981). Considering the factors discussed in *State v. Reedy, supra*, at 1254, we conclude that the refusal to give such an instruction here was not error. We also note that in accordance with *State v. Schaffer*, the trial court adequately instructed the jury on the elements of the offense, the prosecution's burden of proof, and the jury's role in assessing the credibility of the witnesses.

The conviction is affirmed.

HALL, C.J., and HOWE and DURHAM, JJ., concur.

STEWART, J., concurs in the result.