STATE of Utah, Plaintiff and Respondent,

v.

Thomas A. TUCKER, Defendant and Appellant.

No. 860190.

Supreme Court of Utah.

Oct. 3, 1986.

when the prosecution knowingly used false and perjured testimony of a crucial expert witness and when the district court denied his motion for a mistrial because of improper prosecutorial comment. We affirm.

Defendant is the father of the victim who was eight years old when defendant committed the offense. According to the child, defendant took her into her bedroom while her mother had gone shopping and her brother had been ordered by her father to stay in the bathtub. Defendant engaged in anal intercourse with her and told her not to say anything to her mother. Defendant and the victim's mother were divorced at the time of the incident, and defendant moved out of the home within days following the episode. The child then reported the incident to her mother who contacted the police. The child was examined by Dr. Frank Kramer, a pediatrician who disclaimed expertise in sexual abuse diagnosis and could find no structural abnormalities. Dr. Kramer referred the child to Dr. William Palmer, a pediatrician and member of the child protection team at the University of Utah and Primary Children's Medical Center.

At trial, defendant testified that he had previously had anal intercourse with his daughter and that he had pleaded guilty to two charges of oral sex while in the military. He denied that he had had anal intercourse with his daughter on the instant occasion.

At the State's case in chief, Dr. Palmer testified that his digital examination of the victim revealed that her anal muscle tone was looser than that of a normal girl her age and that the child had told him her father had engaged in anal intercourse with her. On cross-examination, when asked whether his examination could be considered abusive, Dr. Palmer responded "absolutely not," and when pressed whether he had ever said that it could be considered abusive, he replied, "No, I have never said. Others have said that. I have never said that." Defendant then proffered a letter written by Dr. Palmer on an

Martin V. Gravis, Ogden, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Salt Lake City, for plaintiff and respondent.

PER CURIAM:

Defendant appeals from the judgment on a jury verdict convicting him of sodomy on a child, a first degree felony under U.C.A., 1953, § 76–5–403.1 (1978 ed., Supp.1986). He claims that he was denied a fair trial

unrelated child abuse case. The court sustained the State's objection to having the letter admitted into evidence but permitted the letter to become part of the record. That letter contains the following sentence which defendant claims proves that Dr. Palmer perjured himself on the stand:

I spent some time talking with [the child] and Mrs. _____ so that they would both appreciate the necessity of [the child's] understanding and giving permission for the completion of the physical, since the examination itself could be construed as being abusive if she were not in accord with it.

Defendant claims that the knowing use of Dr. Palmer's testimony that he had never said the examination could be considered abusive impeached his credibility which was at issue since he was the first person to suggest that anal sex had occurred. A defendant's due process rights would be violated if there were any reasonable likelihood that the false testimony could have affected the judgment of the jury. *State v. Schreuder*, 726 P.2d 1215 (1986); *Walker v. State*, 624 P.2d 687 (Utah 1981). Here there was no false testimony. The letter merely reflects Dr. Palmer's concern that a victim be told of the nature and purpose of the examination so that she would not construe the examination itself as abusive. Nothing in the just quoted passage or elsewhere in the letter would indicate that Dr. Palmer himself considered his examination anything but above reproach. The point lacks all merit.

Defendant produced Dr. David Raskin who testified in his behalf about the interviewing method used by the police on the video tape played for the jury. Dr. Raskin, a well-known polygraph expert, informed the jury of his recent attendance at conferences, workshops, and lectures dealing with the techniques for assessing credibility of child victims in sexual abuse cases. Dr. Raskin essentially questioned the suggestive nature of the police officer's investigatory interview. He also voiced his concern that the importance of truthfulness and honesty had not been established at the outset of the interview but at the end when it was virtually useless. He pointed out that the officers had often embodied the answers in the questions they asked and had described the incidents that presumably happened for confirmation by the children.

In closing argument, the State referred to that testimony as follows: "Is [Dr. Raskin] an expert in what we are talking about or is he a lie-detection expert?" Defendant objected and the court sustained the objection and admonished the State: "There is no testimony that he was a lie-detector expert and the statement will be stricken. Don't refer to him by that way." Defendant moved for a mistrial after the jury had been excused. The court denied the motion on the ground that the statement was not prejudicial but offered to give a cautionary instruction to the jury. Defendant declined the instruction. Defendant claims that the remark probably brought to the attention of the jury the fact that defendant had taken and failed a polygraph test and that they were therefore influenced by the improper argument.

This Court has adopted a two-part test for determining whether a prosecutor's remark warrants reversal: (1) did the remarks call to the attention of the jurors matters which they could not properly consider in determining their verdict, and (2) were the jurors under the circumstances of the particular case probably influenced by those remarks. *State v. Smith*, 700 P.2d 1106 (Utah 1985), *citing State v. Valdez*, 30 Utah 2d 54, 513 P.2d 422 (1973); *accord State v. Bailey*, 712 P.2d 281 (Utah 1985).

Here the State's remark called to the jurors' attention matters they could not justifiably consider in determining their verdict, as no evidence was presented that Dr. Raskin was a polygraph expert. However, the court's immediate admonition that the statement be stricken and no further reference made to Dr. Raskin in that capacity, rendered harmless an otherwise improper statement. *State v. Tucker*, 709 P.2d 313 (Utah 1985); *State v. Kazda*, 540 P.2d 949 (Utah 1975); *accord State v. Pe-*

*terson,* 722 P.2d 768 (Utah 1986). Under Rule 30 of the Utah Rules of Criminal Procedure, any error, defect, irregularity, or variance which does not affect the substantial rights of a party shall be disregarded. *See also State v. Tucker* at 316, *State v. Hutchison,* 655 P.2d 635 (Utah 1982). The State made no further reference to Dr. Raskin's polygraph expertise. Although defendant declined the court's offer of a special cautionary instruction, the jury was generally instructed that it should not consider nor be influenced by any evidence stricken out by the court or by any statement made by counsel.

Under the circumstances we hold that the improper comment did not entitle defendant to a new trial and did not affect his substantial rights.

The judgment is affirmed.

STEWART, J., concurs in the result.